# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC A. MARIN, | 1:10-cv-00375-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"). 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 7, 2010 the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1963, has a GED, attended one semester of college, and attended trade school. (Administrative Record ("AR") 26, 176.) On October 16, 2007, Plaintiff filed an application for SSI, alleging disability due to diabetes, Hepatitis C, fatigue, and nausea beginning on June 18, 2004. (AR 145, 171.)

On December 20, 2006, Plaintiff presented at Community Medical Center for examination. (AR 276-77.) Plaintiff underwent a screening endoscopy, and the examining physician, Dr. Muhammad Sheikh, found that Plaintiff had (1) "four columns of 2 + varices"; (2) minimal portal hypertensive gastropathy; (3) small hiatal hernia; and (4) no ulcers. (AR 276.) Plaintiff was prescribed Nexium, and it was recommended that he return for a follow up in two to three months. (AR 277.)

On December 7, 2007, Dr. Rustom F. Damania examined Plaintiff related to his complaints of psoriasis, diabetes, hypertension, cirrhosis, Hepatitis C, and abnormal burning sensations in his legs. (AR 280). Dr. Damania determined Plaintiff had the following functional capacity:

> The patient is a 44-year-old male. The patient should be able to lift and carry 20 pounds occassionally and 10 pounds frequently. The patient can stand and walk six hours out of an eight hour work day with normal breaks. The patient can sit six hours. No assistive device is necessary for ambulation. No postural limitations. No manipulative limitations. No visual or communicative impairments. Due to his psoriasis he would have workplace environmental limitations. Due to his subjective symptoms of peripheral neuropathy, no climbing or balancing.

(AR 285.)

On January 10, 2008, Dr. Roger D. Fast, a state agency consultant, completed a physical residual functional capacity assessment. (AR 286-90.) He determined that Plaintiff could lift or carry 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and had an unlimited ability to push or pull. (AR 287.) Dr. Fast also determined that Plaintiff could never climb, balance, kneel, or crawl. (AR 288.) He also determined that Plaintiff had no manipulative, visual, or communicative limitations. (AR 288.)

On May 27, 2008, Ernest E. Wong, a state agency consultant, reviewed the record and agreed with Dr. Fast's January 2008 assessment. (AR 303.) Dr. Wong noted Plaintiff's elevated RNA[2] in relation to his Hepatitis C. (AR 302.) Dr. Wong also noted that Plaintiff's psoriasis was stable and that it was reportedly improving as of March 26, 2008. (AR 302.)

On September 4, 2008, Plaintiff presented at Community Medical Center emergency room vomiting blood. (AR 353.) Plaintiff reported fever, chills, sweating, dizziness, and anxiousness. (AR 353.) Another medical notation indicates that Plaintiff was not suffering from a fever or muscle aches. (AR 348.) His skin was noted to be a normal color, and warm and dry to the touch. (AR 349.) Plaintiff underwent an esophagogastroduodenoscopy ("EGD") with endoscopic band ligation. His hospital course was described as follows:

> This is a 45-year-old male with history of liver cirrhosis secondary to alcohol/hepatitis C, diabetes, asthma, hypertension with multiple hospital admissions for variceal bleeding with recent endoscopic band ligation last September 4, 2008, presented again to the ED with hematemesis. The patient's hemoglobin on admission was 10, down from his baseline of 12 to 13, and the patient had persistent hematemesis. He was placed on Nexium and octreotide drip, GI service was consulted at the ED, and EGD was done, which revealed 3 columns of small varices in the distal esophagus and portal hypertensive gastropathy. The patient was recommended to continue with Nexium and octreotide drip with a repeat EGD in 3 months. He initially was stable and doing well, but after the procedure continued to have persistent nausea and nonbloody vomiting. The patient was kept for further observation and gradually has improved and has been tolerating his diet. The patient was placed at least 72 hours on octreotide drip and then discontinued. At the time of discharge, he was ambulating very well and tolerating regular diet. His blood pressure and blood sugar were also controlled during hospitalization. He was advised to follow up with his [primary care provider] in 1-2 weeks and GI followup in 3 months for possible repeated EGD.

(AR 343.) Plaintiff was released from the hospital on September 7, 2008. (AR 343.)

On December 17, 2008, Plaintiff presented at the emergency room with complaints related to his psoriasis. (AR 370.) He reported that his pain was 5 out of 10 when lying down and 8 out of 10 when ambulating. (AR 372.) On December 21, 2007, Plaintiff was again examined related to complaints of psoriasis. (AR 299.) A March 28, 2008, medical record notes that Plaintiff had dried, scaly lesions related to psoriasis. (AR 294.) On June 13, 2008, Plaintiff's psoriasis was noted to be

---

[2] RNA is a ribonucleic acid. *Dorland's Illustrated Medical Dictionary* 1674 (31st ed 2007).

stable. (AR 309.) On April 15, 2009, medical records note that Plaintiff had pruritis and "pimples" all over his body and that he was positive for psoriasis. (AR 305.)

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 62-72, 73-78, 103, 110-11.) On September 17, 2009, ALJ Michael J. Kopicki held a hearing. (AR 20-61.)

Plaintiff testified that he has severe chronic pain in his liver, abdomen, and back; he has been treated by doctors for migraines that the physicians attribute to stress. (AR 31.) His migraines occur every three or four days and they last approximately ten to fifteen minutes. (AR 38.) He suffers fatigue and can only perform any particular activity for 15 minutes to an hour when he becomes short of breath, which he attributes to his asthma; as a result, he cannot concentrate. (AR 31.) His psoriasis causes burning, itching, and peeling to the skin around his legs; it is treated with creams, ointments, and steroid shots. (AR 37.)

A vocational expert ("VE") also testified that some of Plaintiff's past relevant work was equivalent to "Construction Worker II," which is very heavy and unskilled work; he also performed work equivalent to that of a "swimming pool servicer," which the VE stated was "medium, semi-skilled," and "level 4 " work. (AR 53-54.) The ALJ asked the VE to consider a hypothetical person who is the same age as Plaintiff and has the same education, language, and work experience but who is limited to light work; lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking 6 hours per 8-hour workday; and sitting 6 hours per 8-hour work day. The hypothetical person is also limited to no more than occasional climbing, balancing, stooping, crawling, crouching, or kneeling. The VE testified that such a hypothetical person could not perform any of Plaintiff's past relevant work, but there was alternative work for such a person in the light or sedentary, unskilled work categories. (AR 55.)

A second hypothetical posed by the ALJ included a person who: (1) is limited to a range of sedentary work; (2) can lift or carry 10 pounds occasionally, 5 pounds frequently; (3) can stand or walk about 2 hours per 8-hour workday, (4) can sit 6 hours per 8-hour workday; (5) can *never* climb ladders, ropes or scaffolds, balance, kneel or crawl but can occasionally climb ramps and stairs;

(6) can occasionally stoop and crouch; (7) should avoid concentrated exposure to dangerous machinery, electric shock, radiation, and unprotected heights; (8) should avoid concentrated exposure to chemicals, dust, fumes, gases, and extremes of cold and humidity; and (9) should avoid wetness directly on the skin. The VE testified that this hypothetical person could perform work as a "call-out operator," which is sedentary and unskilled work; an "addresser," which is sedentary and unskilled work; and an "escort vehicle driver," which is sedentary and unskilled work. (AR 57.)

On November 4, 2009, the ALJ issued a decision, finding Plaintiff not disabled since June 18, 2004. (AR 8-14.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since October 16, 2007, the date of Plaintiff's application; (2) has severe impairments that include hepatitis C with liver cirrhosis, psoriasis, diabetes mellitus, an enlarged spleen, and asthma; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has no relevant past work; and (5) can perform jobs that exist in significant numbers in the national economy. (AR 8-14.) Plaintiff sought review of this decision before the Appeals Council. On January 19, 2010, the Appeals Council denied review. (AR 2-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On March 2, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff asserts that he meets the listings for chronic liver disease and a skin disorder, and therefore the ALJ erred at the Third Step of the sequential analysis.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant

has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

The ALJ made the following findings at the Third Step of his analysis:

> The impairments listed in Appendix 1, Subpart P, CRF Part 404, which are most nearly applicable to the claimant's medically determinable impairments, particularly Sections 5.00, 6.00, 8.00, 9.00, 14.00 have been reviewed and are not met or medically equaled under the facts of this case.

Plaintiff argues that this determination is not supported by the medical evidence in the record. Specifically, Plaintiff asserts that he meets the requirements of listings 5.05A and 8.05 and is thus entitled to an award of benefits. Defendant contends that the medical evidence does not establish that Plaintiff meets these listings, and the ALJ's decision is supported by substantial evidence.

**A.     Plaintiff Does Not Meet a Listing at the Third Step of the Sequential Analysis**

**1.     Listing 5.05A: Chronic Liver Disease**

To establish presumptive disability under the listings, the claimant bears the burden of proving that his impairments, or combination of impairments, satisfies all the criteria in the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *superseded by statute on other grounds.* "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Listing 5.05A relates to chronic liver disease. To meet this listing, the claimant must present medical evidence to establish four elements: (1) a chronic liver disease resulting in hemorrhaging from esophageal, gastric, or ectopic varices, (2) that is demonstrated by endoscopy, (3) resulting in hemodynamic instability as defined in 5.00D5; and (4) requiring hospitalization for a transfusion of at least 2 units of blood. 20 C.F.R., Part 404, Subpt. P, App. 1 § 5.05A. "Under 5.05A, hemodynamic instability is diagnosed with signs such as pallor (pale skin), diaphoresis (profuse

perspiration), rapid pulse, low blood pressure, postural hypotension (pronounced fall in blood pressure when arising to an upright position from lying down) or syncope (fainting)." 20 C.F.R., Part 404, Subpt. P, App. 1 § 5.00D5.

Plaintiff argues that medical records from September 4, 2008, to September 7, 2008, demonstrate that he *meets* the requirements of this listing. Defendant concedes that Plaintiff meets the first two elements but disputes that the medical evidence establishes that Plaintiff suffered from hemodynamic instability or that he underwent a blood transfusion of at least 2 units of blood.

Plaintiff asserts that he was noted to be positive for fever, chills, and sweat which "tends to suggest that he was having diaphoresis." (Doc. 12, 8:3-4.) He was also noted to be dizzy, which Plaintiff argues is an "obviously a symptom of hemodynamic instability," and his hemoglobin level was low on admission. (Doc. 12, 8:4.) Plaintiff argues that these factors "suggest" that he suffered hemodynamic instability and meets the third element of Listing 5.05A. (Doc. 12, 8:7.) As to the fourth element, Plaintiff asserts that a notation in the medical record to "type & screen 2 units" should be construed as showing that Plaintiff underwent a blood transfusion of at least two units. (AR 354; Doc. 12, 8:9-15.)

Defendant asserts that Plaintiff was never formally diagnosed with hemodynamic instability by a physician, and Plaintiff's "suggestions" that he suffered hemodynamic instability based on the evidence cited are insufficient to meet the listing.

To meet a listing, the specific medical finding set forth in the listings must be established; "[a]n inference is not a specific finding as required by the regulations." *Marcia v. Sullivan*, 900 F.2d 172, 175 n.3 (9th Cir. 1990). Here, the medical records do not establish a diagnosis for hemodynamic instability nor are there specific findings as set forth in section 5.00D to support a diagnosis for hemodynamic instability even if one had been made. In *Marcia*, a claimant argued that he met the listing for chronic liver disease associated with ascites under section 5.05(D) of Appendix I. The Ninth Circuit held that the claimant did not meet the diagnostic requirements for a finding of ascites because, while the condition was diagnosed in the medical record, the regulations required that ascites be demonstrated by abdominal paracentesis. *Id.* at 175. The claimant pointed to a paracentesis test and argued that it was "'absurd to suggest that the claimant's physicians would

perform a paracentesis to confirm ascites in May 1983, diagnose ascites, and then treat the claimant for that condition for several years thereafter if the test had been negative for ascites.'" *Id.* at 175 n.3 (internal citations omitted). The court explicitly rejected this argument, stating that an inference was not a specific finding; despite a paracentesis test that affirmatively established a diagnosis for ascites, that diagnosis was not "based on abdominal paracentesis," which is required by the regulations. *Id.* As the required finding for ascites "based on abdominal paracentesis" was not made, the court determined the claimant did not meet the listing and affirmed the ALJ's decision in that regard. *Id.* at 175.

Like *Marcia*, there are no specific findings in the record that Plaintiff was diagnosed with hemodynamic instability and, even if he was, the record does not show any findings of pallor (pale skin), diaphoresis (profuse perspiration), rapid pulse, low blood pressure, postural hypotension (pronounced fall in blood pressure when arising to an upright position from lying down) or syncope (fainting) as defined in section 5.00D5. Plaintiff asserts that his reports of sweating, chills, and fever support an inference that he suffered from diaphoresis. (*See* AR 353 ("ROS: + F/C/S").)[2] However, an inference is not a specific finding and, moreover, these signs were not recorded as objective medical findings; they were reports from the claimant recorded by medical staff. (AR 353.) In the clinical findings, it was noted that Plaintiff's skin was warm and dry to the touch, the color was normal, and no fever was noted. (AR 349.)

Plaintiff correctly asserts that the list of signs and findings in section 5.00D5 that support a diagnosis for hemodymamic instability is not an exclusive list, but this fact is only relevant to the extent that a doctor has diagnosed hemodynamic instability and supports that diagnosis with symptoms or clinical findings *other* than those in 5.00D5. Here, there is no diagnosis for hemodynamic instability demonstrated by signs or findings other than those in 5.00D5.[3] Plaintiff

---

[2] This is a notation in the medical record that appears to stated that the patient's reported symptoms was positive for fever, chills, and sweating.

[3] If a diagnosis for hemodynamic instability had been made and it was supported by findings other than those listed in section 5.00D, Plaintiff could argue that the list of findings under 5.00D is not exhaustive and that the diagnosis was supported by *other* findings. That argument is not relevant here because there is no diagnosis at all; rather, the Court understands Plaintiff's argument to be that alternative findings establish the condition absent a diagnosis.

is not competent to opine that his symptoms should have been diagnosed as hemodynamic instability – especially symptoms and findings that he reported himself during his hospitalization that do not clearly match those findings in the listing. *See* Social Security Ruling 83-19, 1983 WL 31248, at *2 (An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment").

Plaintiff also argues that a notation during his hospitalization in September 2008 to "type & screen 2 units" indicates that Plaintiff underwent a blood transfusion of at least 2 units. (AR 354; Doc. 12:9-15.) As the court in *Marcia* indicated, an inference is not a specific finding. *Marcia*, 900 F.2d at 175 n.3. There is no specific finding that Plaintiff underwent a blood transfusion; an inference from a notation does not satisfy this element. In sum, the ALJ did not err in finding that the medical records do not establish that Plaintiff meets a listed condition under 5.00.

### 2. Listing 8.05: Dermatitis

To meet the requirements of Listing 8.05, a claimant must have dermatitis "(for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R., Part 404, Subpt. P, App. I § 8.00. Extensive skin lesions are further defined in the Appendix I as "those that involve multiple body sites or critical body areas and result in very serious limitation." 20 C.F.R., Part 404, Subpt. P, App. 1 § 8.00 C.1. Non-exclusive examples of extensive skin lesions are as follows:

   a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

   b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

   c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R., Part 404, Subpt. P, App. 1 § 8.00 C.1.a -c.

There is evidence that Plaintiff suffers from psoriasis, but there is no evidence in the medical record demonstrating that his psoriasis resulted in extensive skin lesions as defined by § 8.00 C. 1. On examination in December 2007, Plaintiff was found to have normal strength, range of motion,

and reflexes. (AR 282.) Dr. Damania did note that Plaintiff had extensive psoriasis on both lower extremities, and some in the groin area. However, none of these lesions were found to interfere with the motion of Plaintiff's joints or seriously limit the use of more than one of Plaintiff's extremities; nor were the lesions found to limit Plaintiff's ability to perform fine and gross motor movements or seriously limit his ability to ambulate. Rather, Dr. Damania found that Plaintiff's hand grip was normal and his finger approximation was intact. (AR 283.) Dr. Damania concluded that Plaintiff could stand and walk six hours out of an eight-hour word day, could sit for six hours, needed no assistive device for ambulation, had no postural limitations, and had no manipulative limitations. (AR 285.) While Plaintiff argues that the ALJ did not discuss how Plaintiff's skin lesions failed to meet the listing, there is no evidence that Plaintiff suffered extensive skin lesions as defined in the listings, and Plaintiff has not offered any theory about how his psoriasis meets or equals the requirements for extensive skin lesions.

**C.     Plaintiff Has Presented No Argument Regarding Equivalency With a Listing**

Finally, Plaintiff has not asserted how his impairments *equal* a listing. The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion or discuss why claimant's impairments did not meet or exceed listings). This is particularly true where the claimant has failed to set forth any reasons as to why the listing criteria have been met or equaled. *Lewis*, 236 F.3d at 514 (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or pointed to any evidence to show, his impairments combined to equal a listed impairment). Plaintiff makes no argument on appeal that his conditions *equal* a listing, and the transcript of the hearing does not indicate that he presented any assertions or theories to the ALJ how his impairments met or equaled any of the listings. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless claimant presents evidence in an effort to establish equivalence).

**CONCLUSION**

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff ERIC A. MARIN.

IT IS SO ORDERED.

**Dated:**    **June 15, 2011**            /s/ Sheila K. Oberto
                                                        UNITED STATES MAGISTRATE JUDGE